# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of October 11, 2023, is by and between Daniel J. Sherman, not individually, but solely as Chapter 7 Trustee ("Trustee" or "Seller") for the consolidated bankruptcy estates ("Estate") of Adeptus Health, LLC *et al.*, ("Debtors")[1] Case No. 20-33071-swe-7 and SLFAQ, LLC ("Purchaser").

**WHEREAS,** on or about December 18, 2020, the Debtors filed voluntary petitions under Chapter 7 for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Texas Northern assigned Case No. 20-33071-swe and whereas on December 18, 2020, Daniel J. Sherman was appointed Chapter 7 Trustee.

**WHEREAS,** on August 20, 2021, the Court entered an order substantively consolidating the Debtors for purposes of claims and distributions.

**WHEREAS,** the Estate has an interest in the following class actions (collectively, the "Class Actions"): (a) Restasis End Payor Antitrust Settlement; (b) Ranbaxy End Payor Antitrust Settlement; (c) Remicade Anti-Trust Settlement; (d) Opana ER Antitrust Litigation EPP; (e) Namenda TPP Class Action Settlement; (f) Zetia Antitrust Settlement; (g) Exforge Indirect Purchaser Antitrust Settlement; (h) In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation a/k/a the Visa MasterCard Payment Card Interchange Antitrust; (i) Generic Pharmaceuticals Direct Antitrust Litigation; (j) Generic Pharmaceuticals Indirect Reseller Antitrust Litigation; (k) Generic Pharmaceuticals End User TPP; (l) Blue Cross Blue Shield Provider Antitrust Litigation; and (m) any other class actions in which the Estate is eligible to participate. The Class Actions do not include the Epipen Settlement Round 2 TPP and the Epipen Settlement Round 2 Consumer.

**WHEREAS,** subject to Bankruptcy Court approval, Seller seeks to sell, and Purchaser seeks to buy, the Class Actions together with all rights arising therefrom for the sum Ten Thousand ($10,000) Dollars.

**NOW THEREFORE,** in consideration of the promises and mutual undertakings herein contained, Seller and Purchaser agree as follows:

1. **Purchase Price.** The Purchase Price shall be good funds in the amount of Ten Thousand dollars ($10,000) payable within 3 business days of receipt by Purchaser of this executed Agreement and the entry of a non-appealable Order of the Bankruptcy Court approving this Agreement. Subject to Bankruptcy Court approval, the Seller agrees that if he sells the Class Actions to a buyer other than SLFAQ, LLC, SLFAQ, LLC shall receive a breakup fee of $1,000 from the Seller.

2. **Assignment of Class Actions.** Seller hereby irrevocably and unconditionally sells, assigns, transfers and conveys to Purchaser all of the Seller's right, title and interest under, in and to the Class Actions, as well as any and all claims and rights related to the Class Actions, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Class Actions and all amounts, interest, and costs due under the Class Actions.

[1] The names of all Debtors are listed on **Exhibit A.**

3. **Authority to Sell.** Subject to Bankruptcy Court approval, the sale of the Class Actions by Seller is made pursuant to the authority vested in the Seller.

4. **Payments Received on Class Actions.** Seller further agrees that any payments received by Seller on account of any Class Actions shall constitute property of the Purchaser to which the Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address set forth below. Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Class Actions. The Class Actions do not include, and the Seller is not required to turn over settlement payments for the Epipen Settlement Round 2 TPP and the Epipen Settlement Round 2 Consumer, which settlements were approved and payable to the Seller prior to this Agreement.

5. **Seller's Representations and Warranties.** In consideration of Purchaser's agreements herein and to induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that, with Bankruptcy Court approval, Seller has full lawful right, title, power, and authority to enter into this Agreement and to convey Seller's interest in the Class Actions to Purchaser as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THE SELLER SELLS, ASSIGNS, AND TRANSFERS THE CLASS ACTIONS TO THE PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED, OR IMPOSED BY LAW.**

6. **Free and Clear Sale.** The sale of Class Actions shall be free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363(f).

7. **No Assumption of Liabilities.** Notwithstanding any other provision of this Agreement and except as set forth in the last sentence of the this paragraph 7, the parties agree that Purchaser is acquiring only the Class Actions and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations, including lien obligations, of Seller or its affiliates of any kind or nature, whatsoever, whether known or unknown, existent or future, arising out of, or in connection with, the Class Actions, except as may otherwise expressly be provided herein. The Purchaser assumes the Estate's rights and obligations in the Class Action Monitoring & Claims Recovery Agreement attached as **Exhibit B.**

8. **Documents of Assignment.** The Seller will execute and deliver to the Purchaser a limited power of attorney and/or bill of sale to evidence and effectuate the transfer of the Class Actions. If the Purchaser needs the Seller to execute additional documents to evidence and effectuate the transfer contemplated by this Agreement before the Debtors' cases are closed, the Seller will seek Bankruptcy Court approval to execute such documents. Once the Debtors' cases are closed, the Seller cannot execute additional documents.

9. **Limited Power of Attorney.** Solely with respect to the Class Actions, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise, and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Class

Actions herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the transfer of the Class Actions to Purchaser and its rights thereunder pursuant to this Agreement.

10. **Entire Agreement.** This Agreement embodies the entire agreement and understanding between Seller and the Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

11. **Benefits and Binding Effect.** All provisions contained in this Agreement, or any document referred to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and the Purchaser.

12. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas.

13. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies or facsimiles of execution signatures shall be equivalent to original signatures.

**THIS AGREEMENT** has been duly executed as of the day and year first above written.

**SLFAQ LLC.**

By: ______________________
Name: Joseph E. Sarachek
Its: President

Address: 670 White Plains Rd., Penthouse, Scarsdale, N.Y. 10583

**Adeptus Health, LLC** (and the Debtors listed on **Exhibit A**)

By: ______________________
Name: Daniel J. Sherman
Its: Chapter 7 Trustee

Address: 509 N. Montclair Avenue, Dallas, TX 75208

# EXHIBIT A

1. Adeptus Health LLC
2. ADPT-Houston RE Holdings LLC
3. FCER Management LLC
4. First Choice ER LLC
5. First Texas Hospital Carrollton LLC
6. First Texas Hospital Cy-Fair LLC
7. Lakewood Forest Medical Center LLC
8. National Medical Professionals of Arizona LLC
9. National Medical Professionals of Texas LLC
10. Potranco Medical Center LLC
11. SSH Medical Center LLC
12. Little Road Medical Center LLC
13. Briar Forest-Eldridge Medical Center LLC
14. Cedar Hill Medical Center LLC
15. Frisco Preston Medical Center LLC
16. Gleannloch Farms Medical Center LLC
17. Pearland Sunrise Medical Center LLC
18. Katy ER Center LLC
19. Sienna Plantation Medical Center LLC
20. Houston 9520 Jones Medical Center LLC
21. AJNH Medical Center LLC
22. Kuykendahl Medical Center LLC
23. Eagles Nest Medical Center LLC
24. Center Street DP Medical Center LLC
25. Rosenberg Medical Center LLC
26. Conroe Medical Center LLC
27. Highland Village Medical Center LLC
28. Frisco DNT Eldorado Medical Center LLC
29. Cinco Ranch Medical Center LLC
30. Northwest Harris County Medical Center LLC
31. Creekside Forest Medical Center LLC
32. Custer Bridges Medical Center LLC
33. WCB Medical Center LLC
34. Samuel Farm Medical Center LLC
35. FM Crossing Medical Center LLC
36. Garland Shiloh Medical Center LLC
37. Mansfield Walnut Creek Medical Center LLC
38. Little Elm FM 423 Medical Center LLC
39. North Dallas Tollway Medical Center LLC
40. Lewisville Medical Center LLC
41. San Antonio Nacogdoches Medical Center LLC
42. WC Medical Center LLC
43. Matlock Medical Center LLC
44. Summerwood Medical Center LLC
45. Haslet Medical Center LLC

46. McKinney 5000 El Dorado Medical Center LLC
47. Kingwood Medical Center LLC
48. Helotes Medical Center LLC
49. Desoto Beltline Medical Center LLC
50. Hickory Creek Medical Center LLC
51. Sterling Ridge Medical Center LLC
52. Friendswood Medical Center LLC
53. NRH Medical Center LLC
54. Lake Highlands Medical Center LLC
55. Medical Center of Spring Rayford Richards LLC
56. Mesquite Town East Medical Center LLC
57. ADPT-DFW RE Holdings LLC
58. National Medical Professionals of Greater Texas LLC
59. National Medical Professionals of Houston LLC
60. National Medical Professionals Specialists LLC
61. ECC Management LLC
62. OpFree RE Investments Ltd.

# Exhibit B

Class Action Monitoring & Claims Recovery Agreement

# CLASS ACTION MONITORING & CLAIMS RECOVERY AGREEMENT

This Class Action Monitoring & Claims Recovery Agreement ("Agreement") is entered into and made effective as of the 1st day of July, 2023 (the "Effective Date"), by and between Class Action Capital Recovery, LLC dba Class Action Capital ("CAC"), a Delaware limited liability company, and Daniel J. Sherman, in his capacity as the Chapter 7 Trustee (the "Trustee") for Adeptus Health LLC and its sixty-one (61) affiliated jointly administered and substantively consolidated debtors (the "Debtors") in the chapter 7 bankruptcy cases pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.[1] The Debtors' chapter 7 cases are jointly administered by the Trustee under case number 20-33071.

## ARTICLE 1
## Definitions

1.1 The following terms used herein, including in the introductory paragraph, exhibits and schedules hereto, shall have the following meanings:

"Claim" shall mean a claim to recover from a Settlement.

"Claim Proceeds" shall mean gross monetary recovery paid from the Settlement funds in recognition of a Claim.

"Class Counsel" shall mean the court-appointed attorneys representing the class members of a Settlement.

"Settlement" shall mean a court-approved resolution of a class action lawsuit resolving the litigation on behalf of a class.

"Settlement Administrator" shall mean any court-appointed settlement administrator, special master, or similar entity or individual(s) authorized to administer any Settlement.

## ARTICLE 2
## Scope of CAC's Authority and Services

2.1 During the term of this Agreement, CAC shall serve as the Trustee's exclusive agent for processing and submitting Claims for any Settlements. This includes Settlements that may presently be available or later become available, as determined by the parties in accordance with this Agreement.

2.2 The Trustee authorizes CAC to file Claims in accordance with the terms of this Agreement and to do the other things listed in this Section 2.2. This authorization includes, but is not limited to, signing documents on the Trustee's behalf to effectuate the filing of Claims (including signing any claim form or related document). The Trustee further authorizes CAC to communicate with any Settlement Administrator, Class Counsel, the court, or any other third party involved in the administration of the Settlement, regarding the Claims, but only to the extent necessary to secure recovery of any Claim Proceeds for the Trustee. The Trustee further authorizes and directs the

[1] The names of the sixty-one Debtors are set forth in **Appendix 1** to this Agreement.

Settlement Administrators, Class Counsel, or any other third party to communicate with CAC and provide any and all information and documentation relating to the Claims. The Trustee authorizes and directs the Settlement Administrator to deliver Claim Proceeds to CAC via either (a) wire transfer, in which case CAC will request that the Settlement Administrator also provide an electronic copy of any check(s) or other evidence of the payment amount that would otherwise have been sent to the Trustee, or (b) check made payable to "Class Action Capital Recovery, LLC FBO Daniel J. Sherman, Ch. 7 Trustee." Upon receipt of any Claim Proceeds, CAC shall promptly send all Claim Proceeds to the Trustee in accordance with his instructions via wire transfer or check payable to "Daniel J. Sherman, Ch. 7 Trustee." If additional documentation is required by the Settlement Administrator, Class Counsel or the relevant court in order to accept and process Claims and deliver Claims Proceeds to CAC, then to the extent such documentation is in the Trustee's possession (or reasonably obtainable), the Trustee agrees to provide such documentation as may be necessary in order to fulfill the purposes of this Agreement (including, but not limited to, a power of attorney or assignment). If requested by CAC, the Trustee further agrees to execute a separate, stand-alone document that sets forth the authority and directives of this Section in a form that may be shared with any Settlement Administrator, Class Counsel or the relevant court.

(a) If needed in order for the Settlement Administrator to deliver Claims Proceeds for the Claims, the Trustee and CAC further agree to execute and cause to be delivered a mutually acceptable agreement providing for indemnity to the Settlement Administrator and/or Class Counsel.

## ARTICLE 3
## Identification of Settlements & Approval to Proceed

3.1 CAC shall identify to the Trustee those Settlements of which it becomes aware and determines it is willing to submit Claims of behalf of the Debtors. CAC shall have sole discretion to determine the Settlements for which it is willing to file Claims on behalf of the Debtors. CAC will use commercially reasonable efforts to identify Settlements for which the Debtors may be eligible to receive monetary compensation. CAC cannot guarantee, however, that it will become aware of all such Settlements. If CAC is unwilling to submit a Settlement Claim on behalf of the Debtors for a specific Settlement, then the Trustee may advise CAC of his desire to file such Claims on his own or with another class action vendor, in which case CAC shall have thirty (30) days to reconsider.

3.2 Upon identifying a Settlement for which it is willing to file a Claim, CAC shall give written notice via e-mail to corky@syllp.com and lrea@forsheyprostok.com mailto: informing the Trustee of the Settlement and CAC's intent to file Claims. If the Trustee does not wish to make any Claims to the Settlement, the Trustee shall provide written notice (including by email response) within thirty (30) days. If the Trustee does not give notice that he does not wish to make Claims to the Settlement, such Claims will be considered "Approved Claims" for purposes of this Agreement.

(a) CAC may provide notice of its willingness to file Claims once it becomes aware of any class action lawsuit in which one or more of the Debtors is/are expected to be a class member.

(b) Notice by the Trustee that he does not wish to make any Claims to a Settlement will be construed as a representation that the Trustee is not making any Claims, whether on his own or through a third party. In the event that Claims are filed by or on behalf of the Trustee after the Trustee has given notice that he does not wish to make Claims, the Trustee agrees to pay CAC the Commission that it would otherwise be entitled to receive under this Agreement.

3.3 Should the Trustee desire for CAC to file Claims to a Settlement that CAC has not identified as set forth above, the parties may agree to have CAC file Claims, in which case the terms of this Agreement will apply, unless otherwise agreed.

3.4 Unless agreed otherwise, this Agreement shall apply to any Approved Claims during the Agreement's Term, as defined below. Should the Term of this Agreement expire before the completion of the Services and the payment of Claims Proceeds for Approved Claims, the parties shall continue to work together to complete the preparation and submission of Claims, and CAC shall be entitled to its Commission, as defined below.

3.5 CAC shall have no obligation to file Claims in any class action settlement that it has not identified pursuant to this Article. CAC shall only be responsible for filing Claims in the Settlements identified pursuant to this Article.

**ARTICLE 4**
**Claim Data & Cooperation**

4.1 The Trustee will timely provide CAC with all reasonable and reasonably required data, documentation, and assistance that CAC deems necessary to prepare and submit Claims. This may include, but is not limited to, documentation necessary to establish that the Trustee is the holder of the rights to Claims for the Debtors. The Trustee acknowledges that the failure to provide complete and accurate data, documentation or other materials in a timely manner may result in Claims not being submitted and/or a reduction of any Claim Proceeds.

**ARTICLE 5**
**Representations and Warranties**

5.1 By CAC:

(a) Any data and information provided to CAC by the Trustee ("Claim Data") will be used solely for the purpose of pursuing recoveries under the Settlements on behalf of the Trustee, including determining eligibility for Settlements and reimbursements, submitting Claims, and providing Claims Proceeds to the Trustee. CAC will keep Claim Data confidential and will not disseminate, sell, transfer, share, communicate, or make Claim Data available to any party other than the Settlement Administrators or the relevant court, and to them only for the purpose of securing Claim Proceeds under the Settlements. This confidentiality provision shall survive the expiration or termination of this Agreement.

(b) CAC will use best efforts to pursue the Trustee's recoveries from Settlements based on the data and information received from the Trustee. The Trustee understands that CAC cannot guarantee any particular recovery, nor can CAC control or predict the timing of Settlement payments. To the extent permitted by applicable law, CAC disclaims any and all express or implied warranties, including any alleged to arise from the course of dealing or course of performance.

5.2 By the Trustee:

(a) By signing below, and subject to Bankruptcy Court approval, the undersigned certifies that he is authorized to enter into a binding contract on behalf of the Debtors.

(b) The Trustee understands that (a) CAC's fee for its services, described more fully below, is a percentage of the financial recovery from Claims; (b) the Trustee does not have to hire CAC or any other third-party in order to submit Claims to Settlements; (c) the Trustee is entitled to prepare, process, and file its own Claims without incurring any fee; and (d) additional information about individual Settlements can be found on each official court-approved website.

(c) The Trustee understands that eligibility to participate in any Settlement and to receive payment is not guaranteed. Whether or not any of the Debtors is a member of a Settlement class is governed by the terms of each Settlement agreement and subject to final determination by the applicable court.

(d) The Trustee understands that by submitting a Claim to a Settlement, the Trustee and Debtors will normally be giving up the right to "opt out" of that Settlement and to pursue separate claim(s) against the defendants. The Trustee is not relying on CAC in deciding whether to opt out of any Settlement, and CAC is not advising the Trustee or Debtors whether to opt out of any Settlement. In the event that the Trustee decides to opt out of any Settlement, the Trustee will provide written notice to CAC.

(e) The Trustee understands that this is not a contract for legal services and does not provide for the Trustee's legal representation. CAC is not a law firm and does not practice law. The Trustee also understands that CAC is not affiliated with any Settlement Administrators, Class Counsel or the court.

(f) The Trustee has not entered into any other agreement authorizing Approved Claims to be filed on his behalf. The Trustee will not submit Approved Claims, either directly or via a third party, to any Settlements during the Term of this Agreement, nor will the Trustee sell, transfer, convey or dispose of those Claim rights.

(g) The Trustee will provide all data, access, assistance and cooperation reasonably necessary to permit CAC to perform the Services. The Trustee understands and acknowledges that its failure to provide CAC the data, documentation, or other information necessary to support any Claims may result in the denial of the Claims.

## ARTICLE 6
## Fee for Services

6.1 As compensation for the services described herein, and subject to Bankruptcy Court approval, the Trustee agrees to pay CAC a fee of 20% ("Commission") of the Claim Proceeds from each Settlement. The Trustee agrees and directs that the Claim Proceeds shall be paid to CAC as set forth in Section 2.2, above, and deposited into a CAC account where CAC will hold such funds in trust and process the Claim Proceeds as follows.

(a) CAC will promptly pay to the Trustee any Claim Proceeds that CAC receives on behalf of the Debtors together with copies of any checks or other evidence of the amount and occurrence of payment received from the Settlement Administrator. .

6.2 Upon receipt of Claim Proceeds from each Settlement, the Trustee will assist CAC with filing a fee application with the Bankruptcy Court seeking approval for the Trustee to pay CAC

20% of the Settlement Proceeds. Upon entry of an order granting such fee application, the Trustee will pay CAC its Commission.

6.3 CAC's Commission is contingent upon payment of Claim Proceeds. CAC's Commission is all-inclusive, and no other expenses, fees, commissions, or payments of any kind will be charged to the Debtors' estates, unless expressly agreed to by the Trustee in writing and in advance.

6.4 In the event that any of the Debtors' Claim is sold or otherwise transferred to a third party, the Trustee agrees that such sale or transfer is subject to CAC's right to payment of the Commission.

6.5 This Agreement supersedes any similar agreement entered into between CAC and the Trustee or Debtors purporting to allow the submission of Claims by or on behalf of the Debtors. In the event that a Settlement Administrator indicates that a different Claim has been filed by or on behalf of the Trustee or Debtors, the Trustee agrees to (i) provide written confirmation to the Settlement Administrator that any such Claim was filed without authorization and direct the Settlement Administrator to disregard the Claim, or (ii) ensure that CAC receives its Commission as specified under this Agreement.

## ARTICLE 7
## Duration & Termination

7.1 This Agreement shall commence on the Effective Date and shall continue for a term of twelve (12) months ("Initial Term"). At the end of the Initial Term, and on each anniversary thereafter, this Agreement shall automatically renew for an additional term of twelve (12) months ("Renewal Term"). The term of this ("Term") shall consist of the Initial Term together with any Renewal Term(s).

7.2 Both the Trustee and CAC may terminate this Agreement at any time during the Term by providing written notice to the other party of not less than thirty (30) days.

7.3 In case of any such termination, CAC shall provide a report, with supporting documentation, to the Trustee of the status of any Claims prepared and/or submitted under any Settlements, and any Claim Proceeds received or pending. Further, CAC shall pay any Claim Proceeds received but not distributed to the Trustee.

## ARTICLE 8
## Resolution of Disputes

8.1 BANKRUPTCY COURT JURISDICTION: The parties agree that the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, shall have exclusive jurisdiction to resolve any dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof. The Trustee and CAC each agrees to waive any right to a jury trial.

## ARTICLE 9
## Additional Provisions

9.1 Limitation of Liability. CAC's maximum liability to the Trustee may not exceed the total dollar amount paid to CAC pursuant to this Agreement, regardless of the legal theory under which such liability is imposed, unless the culpability of the liable party meets or exceeds gross negligence.

9.2 Choice-of-Law. This Agreement shall be governed by the laws of the State of New York without reference to its choice-of-law principles.

9.3 Entire Agreement. This Agreement shall constitute the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. There are no representations, warranties, covenants, conditions or other agreements, express or implied, collateral, statutory or otherwise, between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement.

9.4 Independent Contractor. In performing the services hereunder, CAC shall operate as and have the status of an independent contractor. No party's employees shall be considered employees of the other party, nor shall the employees of any party be eligible or entitled to any benefits, perquisites or privileges given or extended to any of the other party's employees. Nothing contained in this Agreement shall be deemed or construed to create a joint venture or partnership between the parties.

9.5 No Third-Party Beneficiaries. This Agreement is for the sole and exclusive benefit of the parties, and it shall not be deemed to be for the direct or indirect benefit of any other person or entity, including either party's customers, clients or employees.

9.6 Waiver. No waiver of any of the provisions of this Agreement will constitute a waiver of any other provision (whether or not similar). No waiver will be binding unless executed in writing by the party to be bound by the waiver. A party's failure or delay in exercising any right under this Agreement will not operate as a waiver of that right. A single or partial exercise of any right will not preclude a party from any other or further exercise of that right or the exercise of any other right.

9.7 Successors and Assigns. This Agreement is binding on and inures to the benefit of the parties and their respective successors and permitted assigns.

9.8 Counterparts. This Agreement may be executed in any number of counterparts (including counterparts by facsimile) and all such counterparts taken together shall be deemed to constitute one and the same Agreement.

**IN WITNESS WHEREOF**, authorized representatives of the parties have signed this Class Action Monitoring & Claims Recovery Agreement as of the Effective Date.

**Daniel J. Sherman, Chapter 7 Trustee for Adeptus Health LLC, *et al.***

By: Sherman, Daniel J.
(Print Name)

Its: Chapter 7 Bankruptcy Trustee
(Title)

Signature: DocuSigned by: Sherman, Daniel J. 0FD9F4BE8DD547F...

Date: 7/5/2022

**Class Action Capital Recovery, LLC**
**dba Class Action Capital**

By: John J. Thomas
(Print Name)

Its: CEO
(Title)

Signature: DocuSigned by: John J. Thomas F7677643A26C45D...

Date: 7/5/2022